SIMPLEX ELECTRIC HEATING CO. v. LEONARD et al.

(Circuit Court of Appeals, Second Circuit. November 11, 1912.)

No. 13.

PATENTS (§ 328*)—INFRINGEMENT—ELECTRIC HEATER.

The Morford patent, No. 490,034, for an electric heater, in which the heating coils are imbedded in a coating of adhesive insulating enamel, or its equivalent, applied to the upper surface of the metal base, cannot be construed to cover glass as an equivalent, in view of the express disclaimer of such material by an amendment of the application while pending in the Patent Office, to avoid references cited by the examiner. As so construed, *held* not infringed.

Appeal from the Circuit Court of the United States for the Southern District of New York; John R. Hazel, Judge.

Suit in equity by the Simplex Electric Heating Company against H. Ward Leonard and others. Decree for defendants, and complainant appeals. Affirmed.

For opinion below, see 180 Fed. 763.

This cause comes here upon appeal from a decree dismissing a bill in equity for infringement of a patent. The patent is No. 490,034, granted January 17, 1893, to Thomas E. Morford for an electric heater. The Circuit Court held that the essential elements of the claims in suit were not found in defendants' articles of manufacture.

Duncan & Duncan, of New York City (Frederick S. Duncan and Harry L. Duncan, both of New York City, of counsel), for appellant.

C. V. Edwards, of New York City, for appellees.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). The invention, as stated generally in the patent, "consists in imbedding conductors in an enamel of insulating material that is made to adhere to the device that is to be heated by or otherwise used in connection with an electrical current, and which serves to insulate the conductors while connecting them to the device." Since the disposition we shall make of the cause follows from the conclusions we have reached as to the "enamel of insulating material," it will be sufficient to excerpt from the patent only such passages as refer to this enamel. The patentee, in his specifications, first mentions the enamel as "an efficient and desirable means for the insulation of the conductors used in connection with devices that are to be heated by means of an electric current." Referring to the drawings, he states that:

"On the upper surface of the metal base is an enamel of any desired substance adapted to serve as an electric insulator. Within the enamel are imbedded the coils of an electric conductor in such manner that all portions of the conductor are completely imbedded, and are separated from one another, and only the incoming and outgoing connections of the conductor are exposed."

He then says:

"In the application of the enamel and electric conductor, it is preferable to first spread on the surface of the object a thin coat of enamel in soft condition, which is then caused to harden. Afterward the coils of the conductor are laid upon this, and next a second coat of enamel in soft condition is spread thereon and subjected to a sufficient degree of heat to cause the two coats of enamel to unite and firmly adhere together and to the base. In this manner the several coils of the conductor may be completely surrounded and imbedded in a compact and integral insulator, that is made to adhere to the surface of the object which carries the conductor."

This paragraph was in the original filed application. While proceedings were pending in the Patent Office a statement was inserted that:

"The method herein referred to of applying the insulator and conductor to the base or body is part of the subject-matter of a concurring application, serial number 411,832, and is reserved to be claimed therein."

The Office having rejected the application upon reference to earlier patents, in which glass was used as an insulator, the patentee inserted the following paragraph:

"In using the term 'enamel' I refer to any of the adhesive substances commonly employed to produce on the surface of metallic and other objects an adherent coating or film, usually called an 'enamel,' and which is made permanent by heating it after its application; but I prefer to use such substances as are commonly applied to iron ware in the manufacture of cooking utensils, generally known as granite ware."

The Office still rejected the application, again citing its former references. Thereupon the solicitor for applicant filed an argument, in which he set forth the applicant's position in reference to glass as shown in the following excerpt:

"Glass, it is true, is an insulator, and is a vitreous substance, as is enamel; but it is not the equivalent of an enamel for the purpose of this invention, for many reasons, chief of which is that it is incapable of surviving the expansion and contraction of the metal to which it is made to adhere. Enamel, on the other hand, has substantially the same coefficient of expansion as metal, as is shown by its universal use on ordinary cooking utensils, and hence is adapted to the purpose of the Morford invention; and it is only a substance having this capability that can be fairly held to be covered by the use of the term 'enamel or its equivalent' in his claims."

The applicant then offered to make the definition of his enamel (quoted above) more specific by adding to the quoted paragraph the following:

"However, I do not regard as equivalents glass or such other vitreous substances as have not the capability of requisite adhesion to the body they coat, and the property of expanding and contracting with it sufficiently to avoid breaking of the insulation."

Upon this amendment being made in the specifications, the patent was promptly issued. The claims in controversy are:

"1. In an electro-heating apparatus, the combination, with the heated surface plate and the resistance, of a coating of enamel or its equivalent, securing the resistance to, but insulating it from, said plate, substantially as set forth.

"2. In an electro-heating apparatus, the combination, with the plate to be heated and the resistance, of a coating of adhesive enamel or its equivalent

for securing the resistance to, but insulating it from, said place, substantially as set forth.

"3. In an electrical apparatus, the combination, with a supporting body and an electric conductor, of a coating of enamel or its equivalent, securing the conductor to, while insulating it from, the body, substantially as set forth."

Defendants' articles are of two types; one a so-called resistance tube, the other a rheostat. In the tube the supporting body or base is a porcelain tube, which is itself a nonconductor. That circumstance, we are inclined to think, would put the tubes outside the scope of the claims; but since, in the rheostats, the base is of metal and a conductor, we prefer to dispose of the whole case on the question of enamel.

The testimony seems to indicate that, at the time Morford's application was pending in the Patent Office, no one had shown any means whereby glass could be applied to a purpose, such as that of the patent, where it would have to adhere to a metal surface when exposed to the action of heat. Probably the applicant's solicitor was correct in stating that glass, as the art then knew it, if used to make Morford's electric heater, would be "incapable of surviving the expansion and contraction of the metal to which it is made to adhere." But the testimony shows that the substance used in defendants' articles is glass, as defined scientifically or in common speech. Whether it does "survive the expansion and contraction of the metal to which it is made to adhere," because it is applied in some way other than the one employed in the earlier art, is not material, for the patent does not cover the method of applying. The sole question is whether the glass used by defendants is included within the disclaimer. If it be, infringement cannot be found.

The complainant insists that the disclaimer does not include defendants' glass, because such glass is *not* "incapable of surviving the expansion and contraction of the metal to which it is made to adhere." We are not inclined to accept this interpretation. As thus construed the disclosure and claims of the patentee would be thus paraphrased:

"I have discovered and here disclose a combination of elements which, when acted upon by an electric current, will act in a designated way and produce certain stated results. One element of the combination is a chemical compound—an 'enamel.' I do not give any formula for its production, because in the art of making cooking utensils there are well-known formulas for producing enamels, which, when used as an element in my combination, will act to produce the required result. I claim in my particular combination other enamels which are equivalent to these. But I do not regard as equivalent glass (which broadly is a variety of enamel) or other vitreous substances which are incapable of operating in my combination, so that when they are used the result is not accomplished."

As thus construed, the "disclaimer" disclaims nothing. If a person uses a variety of enamel, which will not accomplish results when in combination with the other elements, there will be no operative structure to be proceeded against as an infringement, and no question of equivalent or disclaimer can possibly arise.

The disclaimer was inserted by the applicant of his own motion, at a time when the examiner was citing prior patents in which glass was used. His arguments to differentiate the references, and his pro-

posed amendments devised to take his patent outside of the examiner's construction of them, had failed to convince. This particular amendment was intended by him to accomplish something; to insert in the specifications a clause, which would thereafter prevent his contending for a construction of his patent, which, but for this particular clause, he might fairly contend for. The Patent Office undoubtedly understood that it accomplished something, because upon its insertion all objections were withdrawn and the patent issued.

There is nothing difficult or abstruse about this disclaimer. Patents were cited against the applicant, in which glass was used to coat parts of various apparatus exposed to electric action and to changes of temperature. As the applicant understood the situation, although "glass," broadly speaking, was a variety of enamel, it would not work in his combination, because it did not possess certain qualities which the chemical compound of his combination had to possess. Therefore he disclaimed "glass" as an equivalent of the enamel of the patent.

Now it appears that subsequently some one else has found that glass—even glass, like the glass of the cited cases—may be so treated, that it can be used in patentee's combination, and will work as well as the earlier enamels known at the time of the patent. If the patentee had not disclaimed anything, it might be contended that such glass was an equivalent of the enamels of the patent. But a disclaimer of "glass" should not be practically canceled, when it appears that some one had discovered how to use it effectually in patentee's combination, even though the patentee disclaimed it only because it would not work effectually then, and he supposed it would never do so.

The decree is affirmed, with costs.