FRANK F. SMITH METAL WINDOW HARDWARE CO. v. YATES.

(District Court, S. D. New York. October 16, 1914.)

1. PATENTS (§ 312*)—SUIT FOR INFRINGEMENT—EVIDENCE.

Although there is a legal presumption that the device of a later patent does not infringe a prior patent, and the later patent is admissible where infringement by such device is charged, it is of doubtful value as evidence, in view of the practice of the Patent Office.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 544–549; Dec. Dig. § 312.*]

**2. PATENTS (§ 54\*)—ANTICIPATION—ABANDONED EXPERIMENT.**

A device, a single model of which was made, tried experimentally, and then abandoned, is not an adequate anticipation of a subsequently patented and successful device.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 73; Dec. Dig. § 54.\*]

**3. PATENTS (§ 109\*)—VALIDITY—ADDITIONS TO SPECIFICATION IN PATENT OFFICE.**

New matter added to the specification of a patent application in the Patent Office will not sustain claims which are not within the scope of the original disclosure.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 152; Dec. Dig. § 109.\*]

**PATENTS (§ 244\*)—INFRINGEMENT—TRANSPOSITION OF PARTS.**

Transposition of coacting parts of a patented device, involving no new principle of operation, will not avoid infringement.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 385; Dec. Dig. § 244.\*]

**5. PATENTS (§ 328\*)—VALIDITY AND INFRINGEMENT—TRANSOM ADJUSTING DEVICE.**

The Smith patent, No. 970,656, for a transom adjusting device, *held* valid and infringed.

In Equity. Suit by the Frank F. Smith Metal Window Hardware Company against John W. Yates. On final hearing. Decree for complainant.

Decree affirmed by Circuit Court of Appeals, 216 Fed. 359.

The following are sketches of the models in question:

*Plaintiff's.*                            *Defendant's.*

 

E. W. Scherr, Jr., of New York City (Stephen J. Cox, of New York City, of counsel), for complainant.

James H. Griffin, of New York City, for defendant.

HAND, District Judge. [1] The defendant does not question the verbal applicability of the claims upon the Yates device. The presumption arising from the subsequent patent to Yates that there is no infringement is certainly supported by authorities (Boyd v. Janesville Hay Tool Co., 158 U. S. 261, 15 Sup. Ct. 837, 39 L. Ed. 973), though the Patent Office, as every practitioner knows, pays not the least attention to whether the disclosure of a subsequent patent infringes the claim of a former one, and could not possibly do it, if they were to grant patents for specific forms of disclosures already patented under general claims. What the office does consider is interference between claims upon old disclosures, when not restricted to the differentia of a new species. Obviously any disclosure which supports a claim for a species must, ex hypothesi, infringe a prior claim for the genus. Hence the presumption seems hardly justified in fact, unless it is limited in some undisclosed way. In any event it is at best only a presumption, and, although the later patent is admissible, I have never found what value it had after it was in evidence. Here I think that the presumption is overborne by the facts.

[2] A more plausible ground in the case at bar is to say that the prior art requires some limitation of the claim, and Balling's device is that on which the defendant relies for this purpose. If Balling's device is a good anticipation, the claims cannot cover Yates; if it is not, they certainly can, for none of the other cited patents require notice. If it had been proved to be more than an impractical and untried experiment, I should be disposed to think that it anticipated the claims enough for this case, because it is quite as nearly the reversal of the patent as Yates' latch. However, the whole thing was the merest experiment, not wholly satisfactory as it was, and never tried out in practice. Balling made a single pair under Lenz's instruction, and Lenz soon after got out what he thought to be a better latch. Whether it would have worked at all no one can say, because only one window was ever fitted with them. Against this we have the uncontradicted testimony of Hall and Montgomery, each insurance inspectors, and one, an engineer, that it would not have answered upon fireproof windows. Unless the width of the window was narrowed as in Defendant's Exhibit 11, there must be a cut in the window shield, and in any case the fatal defect is that the latch must move to engage the notch in the pivot. Even if no defects could be ascertained in advance, the single use was only an experiment which was thrown aside as soon as it was once tested. Against a device which has had the success of the complainant's, courts have very steadily refused to consider such occasional and fugitive models as adequate anticipations.

[3] The most serious attack upon the patent is the change which took place in the Patent Office. I think it very likely that these changes were really planned to cover Yates' new device, and I think it equally, if not more, likely that Yates' new device was but a plan to evade the complainant's success in the interference. As to the additions to the specifications, I agree that they contribute nothing, and that unless the present claims can stand on the first disclosure, they cannot stand at all. Moreover, I suppose that a change in the claims is as bad, if not

worse, than a change in the disclosure, for the patent especially lives in the claim. For instance, one would not seriously argue that an inventor, upon further study of his disclosure, could put in a new claim of an altogether new kind. Furthermore, up to the time of the decision of the interference both Yates and Smith had always claimed a latch on the sash and a catch on the frame. Nevertheless, I cannot agree that when we speak of the "invention" which is disclosed, we are as much bound as though we were asking whether an infringer came within the claim. Otherwise, we could never allow any change in claims. Perhaps it is not best to consider too curiously just what the "invention" is; certainly it includes all obvious ways of evading the claims while you steal the real discovery for yourself. Here, no one had ever before this disclosed a way by which you could make an automatic gravity latch, operating positively. That was no doubt not a great invention, but it filled a real need, and it filled it satisfactorily as the event proved.

[4] Whether what Yates did was patentable or not is of no consequence here; certainly he made no discovery in thinking of reversing the position of latch and catch, and the change in the claims which attempted to cover that difference was not a departure from the "invention." Whether the disclosure was broad enough to justify such claims is another matter, and depends upon whether the necessary adjustment was obvious from Smith's disclosure. A counterweight to an upstanding latch would certainly suggest itself to any one, and I cannot agree with Gabler that it was necessary to cut away any part of the frame in complainant's Exhibit No. 1, a model in which the movement of the latch was not sideways as in Yates' disclosure. In short the plan of changing from sash to frame and from frame to sash seems to me quite typically the device of one who trusts that courts can be persuaded to keep the promise to the ear, while they break it to the hope. The mechanical adjustment is surely not difficult, when once you have conceived the idea.

These are the only points in the case, and it seems to me that the complainant must succeed. He will, of course, have costs.