## ABBOTT COIN COUNTER CO. v. STANDARD–JOHNSON CO.

(District Court, E. D. New York. June 27, 1923.)

1. **Patents ⊚⇒172—One not pioneer held limited to particular structures described as elements.**

Under patent for coin-counting machine, consisting of combination of coin container, comprising stationary shell and rotary bottom with opening in the shell wall, a gate spanning the opening, a runway having a floor, and a rotary carrier wheel, where patentee was not a pioneer, he is limited to the particular gate structure and runway floor described.

2. **Patents ⊚⇒328—1,080,381, claim 1, for coin-counting machine, held valid, but not infringed.**

The Smith patent, No. 1,080,381, claim 1, for coin-counting machine, *held* valid but, as limited by the prior art, not infringed by machines manufactured under the Bock patent, No. 1,160,830, and the Donnellan patent, No. 1,389,634.

3. **Patents ⊚⇒112(1)—Presumed that invention does not infringe earlier patent.**

Granting of patents by Patent Office raises presumption that, according to claims of patentees therein, their inventions are not infringements of an earlier patent.

4. **Patents ⊚⇒226—Infringement determined by reference to patent, and not machine manufactured by patentee.**

Where patentee's machine is not manufactured strictly in accordance with his patent, the question of infringement of the patent must be determined by comparison of defendant's machine with the patent, and not with plaintiff's machine.

5. **Patents ⊚⇒178—One not pioneer has only limited range of equivalents.**

Where patentee was not pioneer, but merely inventor of improvement on the prior art, the range of equivalents was limited.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. **Patents ⬅246—For combination not infringed, when material element omitted.**

Where patent was for combination, it was not infringed, if any material element thereof was not found in defendant's machine.

7. **Trade-marks and trade-names and unfair competition ⬅17—No monopoly in colors or characteristics of coin wrappers.**

There can be no monopoly in colors or functional characteristics of flat tubular coin wrappers.

8. **Trade-marks and trade-names and unfair competition ⬅70(4)—Defendant not guilty of unfair competition in using standard colors, though the same as plaintiff's.**

Where, in coin wrappers made by different manufacturers, there had been to some degree a standardization of particular colors for particular coins, defendant's use of the same colors as plaintiff's was not unfair competition.

9. **Trade-marks and trade-names and unfair competition ⬅70(4)—When similarity in appearance of coin wrappers could be avoided by use of different type or arrangement, it should be done.**

Where similarity of defendant's coin wrappers to those of plaintiff by reason of size and arrangement of type was so great as to deceive, and could be avoided by use of type of different size arranged in somewhat different way, such change should be made.

In Equity. Suit by the Abbott Coin Counter Company against the Standard-Johnson Company. Decree for plaintiff for part of the relief sought.

J. S. Wooster, of New York City, for plaintiff.
George D. Richards, of New York City, for defendant.

CAMPBELL, District Judge. This is an action in equity for the alleged infringement of patent No. 1,080,381, issued by the United States Patent Office to H. K. Smith, dated December 2, 1913, and for unfair competition in the manufacture and sale of flat tubular coin wrappers. The answer as to the patent is invalidity and noninfringement, and the alleged unfair competition is denied.

The plaintiff originally based its suit as to the patent on claim 1 thereof, but near the close of the trial was allowed to amend, and also base its suit on claim 3. Since the trial, however, the plaintiff has requested to withdraw claim 3 and base this suit only on claim 1 of said patent in suit, which reads as follows:

"1. In a coin-counting machine, the combination of a centrifugal coin container comprising a stationary shell and a rotary bottom, with an opening in the wall of the shell to expose the rotary bottom; a gate spanning said opening in the wall of the container, so as to leave exposed a peripheral segment of the rotary bottom to receive the coins, which pass one by one through the gate from the interior of the container; a runway having a floor which meets and is flush with the exposed segment of the rotary bottom to receive the coins discharged therefrom; and a rotary carrier wheel located in the runway in close proximity to the centrifugal coin container, to contact with and take hold of each coin before it passes entirely beyond the rotary bottom of said container—substantially as and for the purpose hereinbefore set forth."

This claim is for a combination, and the elements thereof are (1) a centrifugal coin container, comprising a stationary shell and a rotary bottom, with an opening in the wall of the shell; (2) a gate spanning said opening; (3) a runway having a floor; (4) a rotary carrier wheel

located in the runway in close proximity to the centrifugal coin container, to contact with and take hold of each coin before it passes entirely beyond the rotary bottom of said container. The best explanation of the patent is found on page 1, lines 8–49, of the plaintiff's patent in suit (Plaintiff's Exhibit 1):

"Under my invention the coins to be counted are placed in a container having a bottom consisting of a rapidly revolving disk on which the coins rest, and through the agency of which they are discharged singly by centrifugal action through a suitable peripheral outlet or gate in the walls of the container. With this centrifugal coin-discharging container I combine a rotary carrier wheel, whose peripheral speed is slightly greater than that of the rotary disk, and which is so located with reference to the point of centrifugal discharge from the container as to take hold of the coin before it leaves the centrifugally acting disk, and, by reason of its relatively greater peripheral speed, takes off and carries away the coin from the disk, keeping it well in advance of the coins in rear, and passing it through the counting portion of the machine, and thence to the stacker tube, bag, or other receptacle for the counted coins. This combination, with the centrifugally discharging container, of a carrier wheel which takes hold of the coin before it leaves the centrifugal bottom of the container, and carries it along with accelerated speed, is, I believe, new with me. By taking the coin with the carrier wheel directly from the centrifugal bottom, the danger of clogging by reason of coins jamming in the runway through which they pass after leaving the container is very much lessened, and, in conjunction with the more rapid peripheral movement of the carrier wheel, and consequent accelerated speed of the coin, effectually prevents the overlapping of a coin by a following coin, each coin taken by the more rapidly moving carrier wheel being, by its more rapid movement, at once separated from the coin next behind, which has not yet reached the carrier wheel."

Plaintiff contends that Smith did not necessarily, by the words "stationary shell," used in claim 1 of the patent in suit, limit himself to an absolutely fixed or immovable shell, but simply one stationary relatively to the disk. I cannot follow plaintiff in this contention, because it is apparent that the only purpose which the shell in the patent in suit was intended to serve was to prevent the coins from being pushed or thrown out of the container, by the centrifugal force exerted by the rotary bottom, at any point other than at the gate, and this function was to be performed by the shell, regardless of the size of the coin.

Nothing in the specification or claims of the patent in suit shows that Smith anticipated that the shell could be used in any way to determine the size of coin to be counted, and I therefore am of the opinion that by the words "stationary shell," as used in claim 1 of the patent in suit (Plaintiff's Exhibit 1) it was intended to describe a shell that was absolutely fixed. See page 2, lines 21–24, of the patent in suit:

"The container consists of a cylindrical shell *C*, closed at its lower end and firmly attached to the top of the table or frame *A*, as shown more clearly in section in Fig. 11."

[1, 2] By the term "gate spanning said opening" the plaintiff cannot claim broadly for any gate, but must be limited to the particular or specific gate structure described in the patent in suit, because there must be an opening for the escape of the coin in every coin-counting device, and to give the broad construction desired by the plaintiff would give to the plaintiff a greater protection than would be accorded to a

pioneer, and Smith was not a pioneer. This is likewise true as to the runway having a floor. This leaves but one element remaining to be considered:

"A rotary carrier wheel located in the runway in close proximity to the centrifugal coin container, to contact with and take hold of each coin before it passes entirely beyond the rotary bottom of said container."

Smith made a great point of the location of the carrier wheel relative to the centrifugal disk or rotary bottom of the container, and claimed for it, in connection with the more rapid peripheral speed of the carrier wheel, great novelty and utility in the art. See patent in suit, page 1, lines 29–49, Plaintiff's Exhibit 1:

"This combination, with the centrifugally discharging container, of a carrier wheel which takes hold of the coin before it leaves the centrifugal bottom of the container, and carries it along with accelerated speed, is, I believe, new with me. By taking the coin with the carrier wheel directly from the centrifugal bottom, the danger of clogging by reason of coins jamming in the runway through which they pass after leaving the container is very much lessened, and, in conjunction with the more rapid peripheral movement of the carrier wheel, and consequent accelerated speed of the coin, effectually prevents the overlapping of a coin by a following coin, each coin taken by the more rapidly moving carrier wheel being, by its more rapid movement, at once separated from the coin next behind which has not yet reached the carrier wheel."

The point so made by Smith I do not believe can be sustained, because it does not seem to me that the placing of the carrier wheel nearer to the centrifugal disk or rotary bottom constituted invention, but such location is necessarily determined and dictated by mechanical skill. The coins to be counted from time to time being of varying sizes, the carrier wheel must be so placed as to effectually assist in counting the smallest as well as the largest coins, depending on the size of coin being counted at the time. I am of the opinion that the prior art disclosed the benefit of the locating of the carrier wheel in close position relative to the centrifugal disk long before the Smith patent.

I am unable to find that Morrison in his patent (Defendant's Exhibit D) definitely fixed the position of the carrier wheel relatively to the centrifugal disk; but, inasmuch as he intended the last coin to be counted, he of necessity intended the carrier wheel to be so positioned as to accomplish that purpose, and the plaintiff's patent in suit being for a machine which could be set to count coins of various sizes, he in the exercise of mechanical skill placed the carrier wheel in a closer position relative to the centrifugal disk. This opinion is not shaken by the drawings attached to the patent, or the original model from the Patent Office, or defendant's model (Defendant's Exhibit J).

In the Mason patent (Defendant's Exhibit E) the wheel is brought even closer to the centrifugal disk than either plaintiff's or defendant's. See page 3 thereof, line 119 to end of page, and page 4 thereof, lines 1–64:

"Some force is necessary to be applied to the column of wads to operate upon the stops, to produce the automatic change of the receiver which I have described. To do this there is at the open end of the receiver and in line with the bar *B* a channel, *20*, through which the wads pass onto the bar and into that recess in the receiver which may then happen to stand over the bar.

This channel is partly covered, as seen in Fig. 10. *21* is a wheel arranged upon a shaft, *22*, and so as to work in the channel *20*, the axis of the wheel *21* being at right angles to the channel. This wheel *21* is caused to revolve, as indicated by the arrow in Fig. 5, and so that its under surface runs toward the receiver. The wads are delivered beneath the wheel *21*, and it working with pressure upon the wads will force them into the channel one after another, and thus keep the column moving until the recess in the receiver be filled, as before described.

"The wads may be delivered beneath the wheel *21* by any suitable device, or by hand, if preferred; but to provide an automatic device which shall so deliver the wads beneath the wheel I have applied to the machine the feeding device described in letters patent of the United States No. 242,052. This consists of a disk, *23*, arranged upon a vertical shaft, *24*, and so as to revolve in a horizontal plane, the plane of the upper surface of the disk being in the same plane as the bottom of the channel *20*. A rapid revolution is imparted to the disk by means of a pulley, *25*, or otherwise, in the direction indicated by the arrow, Fig. 1. Above the disk is a stationary guard, *26*, substantially concentric with the disk, but supported, say, at *27*, so that the disk may revolve beneath the guard. The lower edge of the guard stands close to the upper surface of the disk, except for a short distance near the channel, where its lower edge is cut away, as seen at *28*, Fig. 11. Outside the guard *26* there is a second stationary guard, *29*, in the form of an overhanging flange, as seen in Fig. 2. A quantity of wads are placed upon the disk, and as the disk revolves they are naturally thrown by centrifugal force outward against the guard *26*, but travel around in contact with that guard until they arrive at the opening *28* beneath the guard. The centrifugal force causes them to pass through this opening and into the space *30* between the guards *26* and *29*. This space *30* forms a continuation from the channel *20* onto the surface of the disk and directly beneath the wheel *21*. The surface of the disk also extends beneath the wheel, as indicated in Fig. 1. The revolution of the disk after the wads have passed into the space *30* causes them to advance toward the wheel *21*, and as they pass beneath that wheel they are forced by the wheel into the channel *20*, and thence into the recess in the receiver. The disk is constantly supplied with wads by the attendant, and by the revolution of the disk they are successively delivered beneath the wheel *21* and by it forced in a column into the receiver, it being understood that the wheel *21* runs in such relation to the wads that, while it readily forces them forward when they meet no obstruction, when they do meet an obstruction the wheel will slip upon the wads. The wheel *21* advances the column until it reaches the stop in the receiver, then applies sufficient force to the column to operate upon the stop, as before described, and so as to discharge one recess and present the other. Under this arrangement the operation of the machine is made entirely automatic."

The plaintiff now relying only on claim 1, the element of the greater peripheral speed of the carrier wheel does not come in question; but as this, in connection with the position of the carrier wheel, is claimed as novel, it is proper to say that in neither the plaintiff's commercial machine (Plaintiff's Exhibit 7) nor in defendant's machines (Plaintiff's Exhibit 6 and Defendant's Exhibit I) does this appear to be true, but, on the contrary, in all it is reversed, and the peripheral speed of the centrifugal disk is greater than the peripheral speed of the carrier wheel.

In my opinion, the relative location and speed of the carrier wheel does not play the important part claimed by Smith in preventing overlapping of the coins, because the patentee himself provided other means for accomplishing this purpose, to wit, a vertically yieldable leaf spring, *h,* Fig. 11 of the drawings of plaintiff's patent in suit (Plaintiff's Ex-

hibit 1), between the gate mechanism and carrier wheel, and described therein on page 2, lines 80–84:

"The coins pass one by one between this leaf spring *h* and the disk in their passage to the carrier wheel. The spring prevents the coins from overlapping one another and assures them in proper position."

The defendant has offered as showing the prior state of the art the following patents:

Patent No. 15,117, issued to M. F. Bonzano, dated June 17, 1856, improvement in machines for counting coins (Defendant's Exhibit C). This patent shows no rotary bottom, but the coins are propelled by a rotary member having a toothed periphery.

Patent No. 227,038, dated April 27, 1880, issued to W. C. Morrison, automatic coin-counting device (Defendant's Exhibit D). This patent shows the centrifugal disk feed, carrier wheel, and gate, and its operation is therein described as follows (page 1, lines 9–19):

"The object of said invention is to enable coins of any given denomination to be automatically and rapidly counted by causing each piece of coin, in turn, to operate a register as it is being passed out of the machine. The said coins, having been dropped into a hopper, are led by a chute to the central portion of a revolving disk, whence they are carried outward by centrifugal force. The coins, in passing outward, pass under a ring which is adjusted to permit but one thickness of coin to pass under it at a time."

See, also, the gate, Figs. 3 and 4 patent No. 319, 284, issued to W. Mason, dated June 2, 1885, machine for counting gun wads (Defendant's Exhibit E), disclosing a centrifugal disk or rotary bottom, a gate opening into a runway, and a rotary face or carrier wheel.

Patent No. 719,459, dated February 3, 1903, issued to Henry Goetze and Leslie M. Sanford, coin-counting device (Defendant's Exhibit F), shows a moving belt or apron, instead of a rotatable disk, a carrier wheel, and a star wheel operated register, and its operation as follows (page 1, lines 21–31):

"The general mechanism embodying these principles or functions consists, primarily, first, of a traveling belt or surface constituting the bottom of the delivering hopper; second, a separative guideway or channel, of which said traveling belt constitutes the bottom; and, third, a counting and registering device arranged in the path of the coins being carried through the guideway by the belt and operated by the coins themselves."

Patent No. 802,551, dated October 24, 1905, issued to C. S. Batdorf, coin-counting, registering, and bagging machine (Defendant's Exhibit G), and patent No. 788,585, issued to J. M. Johnson, dated May 2, 1905 (Defendant's Exhibit P), do not seem to me to bear on the matter at issue sufficiently to require any particular consideration.

A careful consideration of the prior art shows that both parties to this action have in one respect or another adopted principles of each of the Morrison, Mason and Goetze patents. As I have hereinbefore construed the same, I believe claim 1 of the plaintiff's patent in suit (Plaintiff's Exhibit 1) is valid.

[3] The defendant is manufacturing under its own patents, No. 1,160,830, issued to Alfred C. O. Bock et al., dated November 16, 1915, for coin-counting machine, and No. 1,389,634, issued to Edward P. Donnellan, assignor to Standard Coin Counter, Inc., dated Septem-

ber 6, 1921, for coin-counting machine (Defendant's Exhibit O). Both of these patents were issued after the date of the patent in suit, and the granting of these patents by the Patent Office raises the presumption that, according to the claims of the patentees therein, their inventions are not infringements of the earlier patent. Pavement Co. v. City of Elizabeth, 4 Fish. Pat. Cas. 189, Fed. Cas. No. 312; Simplex Electric Heating Co. v. Leonard (C. C.) 180 Fed. 763, affirmed 200 Fed. 581, 119 C. C. A. 61; Mastoras v. Hildreth (C. C. A.) 263 Fed. 571–575. Defendant's machine is manufactured according to its said patents.

[4] Plaintiff's commercial machine (Plaintiff's Exhibit 7) is not manufactured strictly in accordance with the patent in suit, and therefore, in order to determine whether defendant's machine infringes, comparison must be made with the patent in suit, and not with plaintiff's commercial machine.

[5] Smith was not a pioneer, but merely the inventor of an improvement on the prior art, and the range of equivalents is limited.

[6] The plaintiff's patent being for a combination, if any material element thereof is not found in the defendant's machine, it does not infringe. Motion Picture Co. v. Universal Film Co., 243 U. S. 510, 37 Sup. Ct. 416, 51 L. Ed. 871, L. R. A. 1917E, 1187, Ann. Cas. 1918A, 959.

The defendant's machine, in my opinion, has no "stationary shell," but has a detachable member which is vertically adjustable, and shown in defendant's Bock patent No. 1,160,830 (Defendant's Exhibit H), in Figs. 1 and 2, as parts *16, 17* and *20,* and its function and manner of operation is described therein on page 2, lines 14–43):

"Mounted upon said bed plate *3,* so as to be registered above said rotatable table *5,* is a guard member, the same comprising an annular wall portion *16,* from the bottom portion of which extends outwardly a flange portion *17.* Said annular wall portion *16* provides, or incloses, a coin-receiving space or chamber *18,* in which the coins to be counted and delivered to the wrappers are deposited, said chamber or space *18* being open at the top, and said rotatable table *5* forming the bottom of said chamber *18.* Said flange portion *17* is under-cut at its under surface to provide an annular space *19* communicating with said chamber *18,* said annular space being of such height or depth as to permit the entrance thereinto of a coin of smallest thickness, for example a ten-cent piece, when said flange portion *17* is supported directly in contact with said bed plate *3.* The marginal rim portion *20* of said flange portion provides a guide whereby the coins, after entering said annular space *19,* are guided, while being carried around by the table *5* to the discharge opening or passage *21* formed by a cutaway portion of said rim portion *20,* said discharge opening or passage *21* being preferably located at the forward portion of said guard member."

By means of this vertically adjustable member in the defendant's machine, only coins of the desired thickness may enter thereunder at any point according to the direction of their centrifugal flight, and, when the coins have entered under said adjustable member, they are caused to move around through the same successively. There can be no jamming in the defendant's machine, as the coins can only move around in a single layer, and must be singly delivered to the counting mechanism.

In this respect the defendant's machine differs from the patent in suit and the plaintiff's commercial machine, because in plaintiff's commercial machine and in the patent in suit the coin is delivered to the counting mechanism through a single slot transverse the line of movement, the height and breadth of which is regulated to accommodate the coin to be counted. That the jamming of coins can occur on plaintiff's commercial machine was shown on the trial.

Of course, there must be some opening through which the coins can pass from the centrifugal disk to the runway to reach the counting mechanism, and to accomplish this in the defendant's machine, the means described in the defendant's first patent (Defendant's Exhibit H) are used. See page 2, lines 39–52:

"The discharge opening or passage $21$ formed by a cutaway portion of said rim portion $20$, said discharge opening or passage $21$ being preferably located at the forward portion of said guard member. Arranged within said discharge opening or passage $21$ is a guide plate $22$, the same being provided with a curved marginal guide edge $23$ which engages the coins carried around by said table $5$ and tends to turn or guide the same through said discharge opening or passage $21$ and into operative engagement with a propeller mechanism to be subsequently described."

This is in no sense the counterpart for the gate in the plaintiff's patent in suit (Plaintiff's Exhibit 1) which is therein described on page 3, lines 19 to 130:

"I pass now to a description of the gate through which the coins pass one by one from the centrifugal container. The gate is formed primarily of the metal strip $K$ which spans the opening in the wall of the container $C$, as seen more particularly in Figs. 1 and 6. Its central limb $k$ is parallel with the stationary side $f'$ of the runway, and forms the other side of said runway for a portion of the length of the latter, an extension $k'$ on the part $k$ forming the rest of this side of the runway. The end limbs $k^2$, $k^3$, of the strip are bent at an angle to the center limb $k$, but parallel to one another. The end limb $k^2$ extends through a slot formed in the walls of the container on the far side of the opening therein. The opposite end limb $k^3$ is secured to the exterior of the wall of the container at the near side of the opening by a set screw $k^4$, which passes through a longitudinal slot $k^5$ in the part $k^3$ into the container wall, as shown more particularly in Fig. 2. To the end of the limb $k^3$ is secured rigidly a screw $k^6$, which engages a nut $k^7$ swiveled to turn in a bracket $k^8$, attached to the container wall, as illustrated in Figs. 1, 2, and 6. By means of the adjusting screw $k^6$, the strip $K$ can be adjusted lengthwise bodily, and can be secured in its adjusted position by the set screw $k^4$. A pull on the strip $K$ by reason of the incline on which the limbs $k^2$, $k^3$, work, will cause the central portion $k$, $k'$ to move away from, but still parallel to, the opposite stationary side $f'$ of the runway, thus widening the runway. On the other hand, a movement of the strip $K$ in the opposite direction will cause the central limb $k$, $k'$ to approach the other side $f'$, thus narrowing the runway. In this manner the width of the runway can be adjusted to conform to the diameter of the coins operated on. The limb $k^2$ of the strip $K$ is cut away along its lower edge, so as to be some distance above the face of the centrifugal disk $C$, thus leaving between $k^2$ and the disk a space which forms a slot $s$ (Figs. 12, 14) through which the coins can pass from the interior of the centrifugal container, the wall of the container at the point where the limb $k^2$ passes through it bounding the slot at that end. Under this construction it will be seen that a lengthwise movement of the strip $K$ in one direction will lengthen the slot, and in the other direction will shorten it, the length of the slot varying directly with the width of the runway. In this way, at one operation, the adjustment of these two parts can be effected.

"On the container wall opposite a pointer $k^9$ on the strip $K$ (see Fig. 2) is

a properly graduated scale $k^{10}$, by which the strip $K$ can be readily adjusted for different diameters of coins—cents, ten-cent pieces, nickels, quarters, etc. It is desirable that the uncut portion of the lower edge of the strip $K$ should be held as closely as possible in proximity to the face of the rotary disk $D$ without absolute contact therewith. To provide an efficient means of securing this adjustment I support the strip $K$ at its two ends on rather stiff plate springs $k^{11}$ which hold up the strip; and above the ends of the strip, opposite to points below where the plate springs are located, I provide set screws $k^{12}$ carried by brackets attached to the outside of the container wall, and bearing down upon the upper edge of the strip. By means of these set screws the strip $K$ can be depressed against the stress of the springs $k^{11}$, so as to adjust its lower edge to a nicety with reference to the face of the disk $D$ beneath.

"Means for varying the width of the slot to accord with the varying thickness of the coins operated on should also be provided, inasmuch as it is essential that the width of the slot should not be greater than to comfortably accommodate a single coin of a given thickness. To this end I make use of the device shown generally in Figs. 1 and 6, and more in detail in Figs. 12 and 14. I erect upon the limb $k^2$ a vertical support $l$ on the inner face of which is mounted plate $l'$ held to the support by slot and set-screw connection $l^2$, which will permit the vertical adjustment of this plate. An adjusting screw $l^3$ swiveled in an overhang on the top of plate $l'$ and engaging an internally screw-threaded nut or tubular lug $l^4$ on the back of support $l$ is used to effect the adjustment of the plate. Upon the lower portion of the plate $l'$ is firmly secured the gate strip $l^5$, which moves up and down with the plate, and which is of sufficient length for the largest coin to be taken care of by the machine. The lower edge of this gate strip determines the width of the slot. And the working width of the slot $s$ will be determined by the position of the gate strip, as will be understood without further explanation. To secure accurate adjustment of the gate there may be on the vertically adjustable plate $l'$ a graduated scale $l^6$ (Fig. 14) from 10 cents to one dollar, and on the stationary support $l$ a pointer $l^7$. By adjusting the plate $l'$ to bring any one of the graduations on the scale opposite to the pointer $l^7$, the width of the slot $s$ will be adjusted to the thickness of the coin to which that graduation is appropriate."

The meaning of the word "gate" as shown in the foregoing description must govern, and not as it is shown in the plaintiff's commercial machine, because plaintiff has abandoned the gate mechanism of the Smith patent as originally used in its first machine (Plaintiff's Exhibits 9–A and 9–B).

I have hereinbefore held that the placing of the carrier wheel nearer to the centrifugal disk or rotary bottom did not constitute invention, but mechanical skill, and had already been disclosed in the prior art, and therefore it is unnecessary to further consider that element.

The plaintiff's patent in suit being for a combination, and having found that one of the four elements did not constitute invention and that two other elements could not be found in defendant's machine, I am of the opinion that the defendant's machine does not infringe claim 1 of the plaintiff's patent in suit.

[7] The suit of the plaintiff on the claim of unfair competition is based on the alleged copying by the defendant for flat tubular coin wrappers of plaintiff's set of colors and imprint. Plaintiff can have no monopoly on either colors, broadly, or functional characteristics of flat tubular coin wrappers.

[8] I am of the opinion that there has been a standardization of colors for wrappers for certain coins, and that plaintiff, in the selection of

its colors, in many instances, followed Batdorf, who had been furnishing colored wrappers for some time. Plaintiff's contention that the Batdorf use of colors was not a prior use at all, because it was in an entirely different, restricted, and noncompetitive field, is not persuasive, because standardization of the colors was chiefly beneficial in banks and other institutions handling large sums, and regardless of what counting machines they might use, the exchange of wrapped coins between them would be facilitated by the use of the same color to represent the same denominations. Plaintiff's Exhibits 4 and 11 and Defendant's Exhibit A. That the use of red for pennies, blue for nickels, and green for dimes, in the color of the ink where the paper was not colored, is shown in the flat tubular coin wrappers made by the Steel-Strong tubular (Plaintiff's Exhibit 12).

While it is true that many different kinds of flat wrappers were presented on the trial which did not maintain a color standard, yet it seems to me that, from all the evidence presented, there has been a standardization in wrappers used on counting machines, either by color of paper or of ink used in printing, on red for pennies, blue for nickels, and green for dimes, and that to a lesser degree there has been a standardization on orange for quarters and plain craft paper for half dollars.

[9] The method of packing flat tubular coin wrappers and the space for printing does not leave much opportunity to vary the appearance; but, while defendant has printed its name in small letters underneath a description of the contents, the similarity between the defendant's wrappers and those of the plaintiff is so great as to deceive. I am not unmindful of the fact that there is a slight difference in the length of the respective wrappers, and that the evidence shows that defendant has sold only to users of its machine; but still I am of the opinion that no one would without close examination be able to observe the small difference between the wrappers of defendant and plaintiff.

The physical limitations are not such that defendant could not, by the use of type of a different size, arranged in a somewhat different way, distinguish between its and the plaintiff's wrappers, and this it should do. Defendant has the right to use the colors it now uses, and of course the contents of the packages must be described in the same words as plaintiff uses, and there can be little difference in shape, except the difference in length now existing; but the similarity should stop there, and there should be a difference in the style and arrangement of the type used in the printing, to make easy the distinction between the wrappers manufactured by defendant and plaintiff.

I therefore find that claim 1 of the plaintiff's patent in suit, as I have construed the same, is valid; that the defendant's machine does not infringe the same; that defendant has the right to continue the manufacture of the flat tubular coin wrappers of the sizes now made, and using the colors it now uses for the several denominations of coins, and to describe them on said packages by the names now used, and specifying the contents thereof; but that it has not the right to continue the printing on said wrappers in the same style and arrangement of type which it now uses, but should make a change in the style and arrangement of the type used in its printing on said wrappers, so

as to distinguish the same from plaintiff's wrappers; and that plaintiff is entitled to an injunction against the continuance of the use by the defendant of the style and arrangement of the type now used in the printing on its wrappers, but no damages.

Both parties having won and lost, no costs are allowed. A decree in accordance with this opinion may be entered.