520

AUTOMATIC TOY CORPORATION v.
BUDDY "L" MFG. CO., Inc., et al.

District Court, S. D. New York.
Jan. 18, 1938.

Carl E. Ring, of New York City, for plaintiff.

Emery, Varney, Whitemore & Dix, of New York City (Merrill M. Blackburn, of Davenport, Iowa, and Lucius E. Varney, of New York City, of counsel), for defendants.

LEIBELL, District Judge.

I have signed the defendants' proposed Findings of Fact and Conclusions of Law. The Bill of Complaint is dismissed, for want of infringement, with costs. Defendants' counsel has submitted an excellent brief in which he has clearly described the scope and differences of plaintiff's patents, the prior art and the patent under which defendants have constructed their toy automobile. I have borrowed freely from the descriptive features of the brief in this memorandum.

The invention claimed in the two patents in suit is for an automatic steering mechanism whereby, as the toy vehicles are propelled, they will be automatically steered. In the first of these two patents (No. 1,332,545), the front axle turns on a central vertical pivot; and what is there patented is the mechanism employed to cause this axle to turn automatically. In the second patent (No. 1,357,491), the front axle is rigid, i. e., does not turn, and the steering wheels are journaled upon short stub-axles called "steering knuckles" which are pivoted in the ends of the front axle. What is patented in this second patent, is the automatic mechanism which causes the oscillation of these steering knuckles about their vertical pivot posts.

An essential part of the patented mechanism of each patent is a tongue or lever mounted to swing laterally, i. e., in a horizontal plane. In the case of the first patent, this movement is communicated to the front axle; in the case of the second, it is communicated to the steering knuckles. In each case, the lateral swinging of the tongue or lever is effected by the engagement of its rear end in an undulating groove formed in a rotating member. In the earlier patent in suit, this rotating member is drum-shaped with the groove in its periphery; in the later patent, it is disk-shaped with the groove in its face.

Two of the patents in the prior art (Brandao, No. 1,084,392 and Ciaffone No. 1,217,704), each for automatic steering mechanism for toy automobiles, were issued more than two years before the filing date of either of the two patents in suit. One of them (Ciaffone) shows a toy automobile in which the front axle turns on a central vertical pivot, as in that of the earlier patent in suit; and the mechanism through which this turning is effected is actuated by a rotating cam, which is itself driven by suitable connections with the rear wheels. The other prior patent (Brandao) shows a toy automobile in which the front axle is rigid and in which the steering wheels are mounted upon oscillating steering knuckles pivoted in the ends of that axle, as in the second patent in suit. The automatic mechanism used by Brandao to cause the oscillations of the steering knuckles resembles that of the second patent in suit (1) in that it is actuated by rotating members (drums) which are themselves driven by suitable connections with the rear wheels, and (2) in that it has a horizontally swinging lever, through which the rotation of the drums causes the lateral movements of the steering wheels.

The Cookson patent, No. 2,057,557 (Exhibit C), was granted on October 13, 1936, for defendants' toy; and as the second of its nine claims sufficiently shows, this patent is based upon automatic steering mechanism for a toy vehicle which includes a fifth wheel adapted to lift one end of the

toy and turn it around so that it will move in a different direction.

Claim 2 of the Cookson patent is as follows: "2. A wheeled toy supported at both ends upon wheels, propulsion means for propelling the wheels at one end of the toy, another wheel at one end of the toy for lifting the wheels at that end of the toy from the support and carrying that end of the toy around so that the toy, when propelled, will move in a different direction, and connections between said other wheel and said propulsion means such that said other wheel will always be rotated simultaneously with the propulsion wheels."

In defendants' toy automobile, which is alleged to infringe complainant's two patents, the principle upon which the steering is based is fundamentally different both from that of a turning axle and from that of steering wheels individually pivoted at the ends of a rigid axle. Defendants' counsel in his brief describes defendants' automobile as follows:

"Both the front and rear axles of defendants' automobile are rigid and none of the four wheels on these axles is capable of lateral movement for steering. The vehicle, when propelled, would continue in a straight course but for the provision of a fifth wheel which is alternately moved into and out of operation by a tripping device. This fifth wheel is mounted on a short shaft journaled in a swinging frame pivoted on the rear (driving) axle. When the tripping device operates to swing the frame and bring the fifth wheel into operation, the latter, as it comes into operation, lifts the rear end of the automobile slightly so that the driving wheels no longer have contact with the ground or floor upon which the toy is operated. The propelling force is a compressed spring which communicates its energy to the rear axle and also, through a gear connection with this axle, to the fifth wheel. Thus, when the fifth wheel has come into operation and lifted the rear end of the automobile so as to disengage the driving wheels from the floor or ground, the driving power of the spring is thereafter transmitted through the fifth wheel and causes the automobile to turn inasmuch as the fifth wheel is disposed at an angle to the longitudinal axis of the vehicle. After the turn has been made, the fifth wheel returns to its inactive position, thus allowing the driving wheels to make contact again with the floor or ground. After a short interval, the same operation is repeated and so continues until the energy of the spring is exhausted.

"The tripping device consists of a rotating member, which is also driven by the spring, and a finger on the swinging frame the end of which is in the path of the rotating member so as to be engaged periodically to move the swinging frame and bring the fifth wheel into operation and to retain it in operation for a short interval. Upon the release of the finger by the rotating member, the fifth wheel is lifted to its inoperative position by a small retractile spring. The rotating member comprises what are, in mechanical effect, two cams; and the finger is movable so as to bring its end into operative engagement with either one of these cams, as desired. When the finger is in position to engage one of the cams of the rotating member, the fifth wheel is brought into operation once and returned to its inactive position once with each revolution of the rotating member; and when the finger is in position to be contacted by the other cam, the fifth wheel is brought into operation and retracted twice with each revolution of the rotating member."

The mechanism which moves this fifth wheel into and out of operation contains nothing in common with the mechanism of either of the two patents in suit which is not equally common to the automatic steering mechanism of the prior art. The laterally moving tongue of plaintiff's first patent, with its laterally rigid connection to the steering axle, is wholly absent, and likewise the laterally moving compound lever of the second patent with the flexible link attachment to the steering wheels.

Defendants' toy has no steering axle turning about a vertical axis and no steering tongue laterally rigid with respect to the steering axle, nor any equivalent device whose function is to turn an axle of the vehicle in a horizontal plane to effect the steering. Even though the result of the operation of defendants' toy in some respects be the same, the fact that it has a substantially different mode of operation avoids infringement.

In Cimiotti Unhairing Co. v. American Fur Co., 198 U.S. 399, 414, 25 S.Ct. 697, 702, 49 L.Ed. 1100, the Supreme Court said: "* * * in determining infringement we are entitled to look at the practical operation of the machines. * * * If the device of the respondents shows a substantially different mode of operation, even though the result of the operation of the

**522**

machine remains the same, infringement is avoided."

Plaintiff's counsel contends that certain features of plaintiff's patents can be "read on" defendants' mechanism. But the mere ability to fit the terms of the claims thereto, if that were possible, cannot help the plaintiff. In Electro-Dynamic Co. v. U. S. Light & Heat Corporation, 2nd Cir., 278 F. 80, 84, Judge Hough wrote: "It is no longer necessary to multiply citations to show that claims are to be construed in the light of the contribution to knowledge actually made by the inventor, or that mere ability to fit to a thing the words of a claim does not prove infringement. Let it be assumed that (e.g.) the first claim, at least, will 'read on' defendant's system; it remains to inquire whether that (and other) claims, construed consistently with the patentee's actual achievement, justify the finding that there has been that substantial appropriation which is always the essence of the tort known as infringement."

Defendants' toy automobile is based on the Cookson patent issued in October, 1936. The issuance of that patent raises a presumption against its infringement of plaintiff's earlier patents. Frank F. Smith Metal Window Hardware Co. v. Yates, D. C., 216 F. 361, 363; Abbott Coin Counter Co. v. Standard-Johnson Co., D.C., 290 F. 418, 423, 424.

A decree will be entered for the defendants, dismissing the Bill of Complaint for want of infringement, with costs.